IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED ENERGY DRILLING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-cv-119-BR |
| | § | |
| HADAWAY CONSULTING & | § | |
| ENGINEERING, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO JOIN THIRD-PARTY DEFENDANTS

Before the Court is Defendant Hadaway Consulting & Engineering, LLC's Motion to Join Third-Party Defendants. (ECF 19). By its Motion, Hadaway seeks to implead Third-Party Defendants JV Mesa Vista, LLC, Seven Energy Investments, LLC (d/b/a Alpha Seven Energy), and Joseph Sassoon Group, LLC, hereinafter referred to collectively as the Third-Party Defendants. (ECF 19 at 1). After considering the Third-Party Complaint, Motion, Objection, Reply, and applicable law, Hadaway's Motion is GRANTED. (ECF 19; ECF 20; ECF 21).

## I.      BACKGROUND

### A. Mesa Vista Ranch—Hannah 207H Well Project

This controversy arises out of an allegedly underfunded endeavor to develop the minerals at the Hannah 207H Well on the late T. Boone Pickens's Mesa Vista Ranch in the Texas panhandle.[1] (ECF 8 at 3; ECF 19 at 2). The Joseph Sassoon Group is the entity at the top of the chain who was responsible for funding the project. (ECF 19 at 10). Presumably, Joseph Sassoon

---

[1] The background facts are taken from Hadaway's Motion to Join Third-Party Defendants and United Energy's Amended Complaint. (ECF 8; ECF 19). The Court recognizes that other facts may be developed during discovery, but uses the current allegations to frame the background of the case and the relationship between the current and proposed parties.

Group contracted with Seven Energy Investments, LLC and JV Mesa Vista, LLC, hereinafter referred to as one single entity—Alpha Seven Energy,[2] to oversee developing the minerals at the Mesa Vista Ranch. (ECF 19 at 1). The contract forming the basis for the original dispute between Hadaway and United Energy was made possible due to earlier contracts/agreements between Alpha Seven Energy, the Joseph Sassoon Group, and Hadaway. (*See generally* ECF 19).

When United Energy sued Hadaway, Hadaway immediately pointed towards Alpha Seven Energy and the Joseph Sassoon Group as the liable parties for allegedly failing to adequately fund the project and making false representations about funding. The factual basis for the contract dispute between United Energy and Hadaway would not exist without the contracts preceding it— involving Hadaway, Alpha Seven Energy, and the Joseph Sassoon Group.

### B.  Alpha Seven Energy and Hadaway Contract

Hadway was hired by Alpha Seven Energy as the contract operator for the Hannah 207H Well ("the Well"). (ECF 8 at 2). Pursuant to that contract, Hadaway was hired to contact the vendors necessary to drill and complete the Well, enter into contracts with those vendors, and then submit the vendors' invoices to Alpha Seven Energy for payment. (ECF 19 at 9). "An escrow account was created into which funds for drilling and completing the Well were to be deposited." (ECF 19 at 10). When invoices were submitted and approved, the vendors—like United Energy— were to be paid with funds from the aforementioned escrow account. (ECF 19 at 10). The two signatories on that escrow account are executives from the Joseph Sassoon Group and Alpha Seven Energy—Peter Fagan, Senior Partner and CFO of Alpha Seven Energy, and Corey Daniel, CEO

---

[2] The address in Peter Fagan's email signature block—Senior Partner and CFO of Alpha Seven Energy—is the same address as the principal place of business of JV Mesa Vista, LLC. Although that fact is certainly not conclusive, it is some evidence that JV Mesa Vista, LLC should potentially be disregarded as a corporate fiction. In its Third-Party Complaint, Hadway argues that JV Mesa Vista, LLC and Seven Energy, LLC should be treated as one entity. Solely for the purposes of this order, the Court will treat JV Mesa Vista and Seven Energy as one entity.

of the Joseph Sassoon Group. (ECF 19 at 10). The Sassoon Group was to provide the funding into the escrow account to allow vendors to be paid. (ECF 19 at 10).

The contract between Hadaway and Alpha Seven Energy states that Hadaway is an agent of Alpha Seven Energy but would not be liable for any nonpayment of vendors' invoices. (ECF 19 at 10). Instead, the responsibility to pay vendors' invoices was the responsibility of Alpha Seven Energy with the funding to be provided by the Sassoon Group. (ECF 19 at 10–11). Hadaway and Alpha Seven Energy's principal/agent relationship is made clear in their agreement: "HCE [Hadaway] shall have the authority to act as an agent for and on behalf of ALPHA SEVEN in the purchase of equipment, materials and supplies, in the engagement of independent contractors for road and well site preparation, drilling services, loggings services…" (ECF 19 at 10).

Additionally, the contract between Hadaway and Alpha Seven contains an indemnity provision providing that "ALPHA SEVEN shall indemnify HCE [Hadaway] against any claims, demands, damages or causes of action incurred by or asserted against HCE for the payment or nonpayment of such costs and expenses." (ECF 19 at 11). In addition to the indemnity provision, the contract between Hadaway and Alpha Seven provides that Alpha Seven Energy has a duty to defend Hadaway for the claims and causes of action asserted by United Energy in the original lawsuit. (ECF 19 at 13).

Hadaway claims that while the drilling project was underway, and once it became apparent that the escrow account lacked the funds for Hadway to pay the vendors it had hired, Peter Fagan from Alpha Seven Energy and Joseph Sassoon from the Sassoon Group made misrepresentations that additional funds were forthcoming. (ECF 19 at 11). And Joseph Sassoon personally directed Hadaway about how to handle the minimal funds it actually was provided. (ECF 19 at 11).

Regardless, Hadaway claims that it never received more funding despite the alleged misrepresentations that more funding was forthcoming. (ECF 19 at 11).

According to Hadaway, the estimated cost to drill and complete the Well was $7,117,835.00. (ECF 19 at 12). The funding actually provided was $380,000, which accounts for about five percent of the total estimated cost to complete the Well. As a result of this undercapitalization, Hadway was unable to pay many of the vendors, including United Energy. Lastly, Hadaway also claims it has not been paid by the Third-Party Defendants for its services performed directly for the Third-Party Defendants—those invoices total $87,987.57. (ECF 19 at 12).

### C. Hadaway and United Energy Contract

Hadaway hired United Energy for drilling services. (ECF 8 at 2). Specifically, Hadaway and United Energy entered into an IADC Drilling Bid Proposal and Daywork Drilling Contract. (ECF 8 at 2). Pursuant to that contract, United Energy was hired to oversee the drilling and completion of the Well by providing oil and gas well drilling services and equipment to the Well. (ECF 8 at 3–4; ECF 19 at 1). United Energy provided materials, labor, and the equipment necessary to improve the Well from February 1, 2023 to March 7, 2023. (ECF 8 at 3).

After drilling to roughly 5,000 feet, Hadaway instructed United Energy to stop its operations at the Well. (ECF 8 at 3). Under Hadaway's direction, United Energy's operations were on hold for nearly a month before Hadaway eventually released United Energy entirely. (ECF 8 at 3). The escrow account Hadaway was supposed to use to pay United Energy did not have sufficient funds. (ECF 19 at 11). As a result, Hadaway was unable to pay United Energy—and many other vendors that Hadaway hired. (ECF 19 at 14). In fact, Hadaway's Third-Party Complaint alleges

that the total charges from vendors it hired for this project amount to $2,091,118.37—all of which are still apparently unpaid. (ECF 19 at 14).

In sum, United Energy seeks to recover $563,547.76 from Hadaway for its work on the Well, plus interest and collection expenses, lost profits from the month-long halt in operations due to not being able to use its rig at other jobs, damages stemming from its fraud claims against Hadaway, its attorneys' fees, and other damages listed out in more detail in the Amended Complaint. (ECF 8 at 6).

### D. Procedural History

United Energy filed its Original Complaint against Hadaway on July 12, 2023. (ECF 1). Hadaway appeared and answered on September 7, 2023. (ECF 9). The undersigned held a Rule 16 Scheduling Conference on October 3, 2023—counsel for both United Energy and Hadaway were present in the courtroom. (ECF 14). In addition to fashioning the current Scheduling Order (ECF 16), the parties discussed the claims, and counsel for Hadaway stated his plan to file the Motion to Join currently before the Court. (ECF 14). On December 4, 2023, Hadaway filed its Motion to Join Third-Party Defendants pursuant to Federal Rule 14. (ECF 19).

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party plaintiff, serve summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it filed the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1).

The purpose of Rule 14(a) is "to bring in third parties who are *derivatively* liable to the impleading party." *Hassan v. La. Dep't of Transp. & Dev.*, No. 98-31224, 1999 WL 642861, at *2

(5th Cir. July 26, 1999). Impleader is appropriate "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967). The policy underlying Rule 14 is to promote judicial economy by eliminating circuity of action. *Powell, Inc. v. Abney*, 83 F.R.D. 482, *485 (S.D. Tex. Sept. 18, 1979); *Am. Fid. & Cas. Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956); *see also* 6 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1442 (3d ed.) ("The primary purpose of any procedure authorizing impleader of third parties is to promote judicial efficiency by eliminating 'circuity of actions.'"). Accordingly, "federal courts are directed to construe Rule 14 liberally." *Abney*, 83 F.R.D. at *485 (citing *Tower Mortgage Corp. v. Reynolds*, 81 F.R.D. 560, 561 (W.D. Okl. 1978)).

Rule 14 is employable when the third-party plaintiff's claims are an outgrowth of the same core facts that underlie the original claim. *See Abney*, 83 F.R.D. at *485; *see also Wilkie v. U.S.*, 279 F.Supp. 671 (N.D. Tex. Feb. 9, 1968) (highlighting Rule 14 is intended for disposing of multiple claims arising under a single set of facts in one action). "The crucial characteristic of a Rule 14 claim is that [the] defendant is attempting to transfer to the third-party defendant the liability asserted against [the original defendant] by the original plaintiff." *Cambridge Strategies, LLC v. Cook*, No. 3:10-CV-2167-L, 2021 WL 176587 at *6 (N.D. Tex. Jan. 23, 2012) (Lindsay, J.). Some factors courts have considered in determining whether to permit a third-party complaint include possible prejudice to the other parties, undue delay by the third-party plaintiff, and whether allowing the third-party complaint would further the goals of Rule 14 by eliminating duplicative suits and promoting judicial economy. *Duke v. Compass Bank*, 2014 WL 879674, No. 4:13-CV-1012-A, at *1 (N.D. Tex. Mar. 15, 2014); *see also* 6 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1442 (3d ed.). Ultimately, "[t]he court is afforded 'wide discretion' in deciding

whether to permit such third-party practice." *Duke*, 2014 WL 879674, at \*1 (citing *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984)); *see also Southern Railway Co. v. Fox*, 339 F.2d 560, 563 (5th Cir. 1964).

### III.   ANALYSIS

In its Motion and Reply, Hadaway argues that any recourse United Energy has against it should be imputed to the Third-Party Defendants. (*See* ECF 19; ECF 21). Essentially, Hadaway claims that but for the Third-Party Defendants' failure to provide Hadaway with the funds to pay the vendors and the misrepresentations about funding, this controversy would not exist. (ECF 8 at 3; ECF 19 at 2). In other words, if the Sassoon Group and/or Alpha Seven Energy had funded the escrow account, Hadaway would have paid all the vendors, including United Energy. Likewise, Hadaway alleges that this controversy could have been minimized or avoided altogether had the Third-Party Defendants been honest about the funding situation. Based on the foregoing facts, Hadaway alleges the Third-Party Defendants are liable for at least part, if not all, of United Energy's claims against Hadaway.

Hadaway also points out that, by the terms of its contract with Alpha Seven Energy, it has a principal/agent relationship with Alpha Seven Energy. (ECF 19 at 2; *see also* ECF 19 at 15 ¶¶ 33–34). Hadway was acting as an agent on behalf of Alpha Seven Energy when it contracted with United Energy. (ECF 19 at 2). Hadaway also points out that, based on a conspicuous term of the contract between Hadaway and Alpha Seven Energy, Alpha Seven Energy has a duty to indemnify and defend against United Energy's claims for any judgment United Energy may be entitled to against Hadaway. (ECF 19 at 11 ¶ 17; *see also* ECF 19 at 13 ¶ 2). Ultimately, Hadaway argues that the Third-Party Defendants should be joined because they are liable to United Energy for all or part of the claims United Energy has against Hadaway. (*See* ECF 19; ECF 21). In simple terms,

Hadaway claims it was the middleman between the Third-Party Defendants and United Energy; thus, any liability United Energy alleges against Hadaway should be passed along to Alpha Seven Energy and the Sassoon Group.

The situation Hadaway finds itself in is not unusual in the energy or construction industry. Hadaway was hired by the Third-Party Defendants to oversee the drilling and completion of an oil well. (ECF 8 at 2–3). In that capacity, Hadaway hired United Energy to provide oil and gas well drilling services. (ECF 8 at 2–3). Hadaway did not have the funds to pay United Energy for its work, which Hadaway alleges is because the Third-Party Defendants failed to maintain the escrow account that Hadaway was supposed to use to pay the vendors. (ECF 8 at 3; ECF 19 at 10). Because the Third-Party Defendants failed to adequately fund the escrow account, United Energy—and many other vendors—were never paid. (ECF 8 at 4; ECF 19 at 14).

Hadaway's Motion to Join (ECF 19) presents the quintessential circumstance in which courts should allow impleader under Rule 14. *See Joe Grasso & Son, Inc.*, 380 F.2d at 751; *see also Hassan*, No. 98-31224, 1999 WL 642861, at *2. Put simply, the Third-Party Defendants' alleged liability to Hadaway is transferrable to United Energy's claims against Hadaway. As previously stated, Rule 14 permits a third-party plaintiff, like Hadaway, to bring a claim against a nonparty who is or may be liable to it for all or part of the claim against it. *See* Fed. R. Civ. P. 14(a)(1).

Here, the Third-Party Defendants appear to be liable to Hadaway for at least part—if not all—of United Energy's claims against Hadaway. Notably, Alpha Seven Energy acted as a principal to Hadaway and agreed to indemnify and defend Hadaway. (ECF 19 at 11 ¶ 17; *see also* ECF 19 at 13 ¶ 2). Additionally, Alpha Seven Energy and the Sassoon Group allegedly promised to fund the escrow account from which Hadaway was to pay the vendors, and their failure to

provide funds is what lead to this controversy. Lastly, executives from Alpha Seven Energy and the Sassoon Group supposedly made false representations to Hadaway about the lack of funding in the escrow account, which likely caused Hadaway, and the vendors, to incur more costs and expenses than they would have if they had known they would never be paid.

As to the factors courts should consider when ruling on Rule 14 motions, this factual scenario weighs in favor of allowing the Third-Party Defendants to be joined. *See Duke*, 2014 WL 879674, at *1. First, there is little concern for prejudice to United Energy because it will probably have to sue the Third-Party Defendants at some point to get paid for its claims, even if it received a judgment against Hadaway. And it will be more convenient for United Energy to have the Third-Party Defendants brought into this lawsuit to conclude the matter without multiple lawsuits. Of course, allowing Hadaway to implead the Third-Party Defendants will prejudice them by being brought in this lawsuit, but that carries little weight as Hadaway could sue them in a separate action as well. Second, Hadaway is not causing undue delay by seeking to implead the Third-Party Defendants; instead, Hadaway is seeking to bring the necessary parties into the lawsuit. Likewise, this case has only been on file for about six (6) months, and Hadaway has acted swiftly and prudently in moving to join the Third-Party Defendants. (ECF 1; ECF 19). From United Energy's perspective, allowing the Third-Party Defendants into this suit may actually be more efficient than filing a separate lawsuit or waiting on a lawsuit between Hadaway and the Third-Party Defendants to be resolved. In sum, permitting joinder in this circumstance may be the most efficient route to a complete resolution between the parties. Finally, granting the Motion to Join would further the goals of Rule 14 by eliminating duplicative suits and promoting judicial economy. Denying Hadaway's Motion to Join Third-Party Defendants would undoubtedly lead to duplicative actions.

In sum, the relevant factors weigh in favor of granting Hadaway's Motion to Join. *See Duke*, 2014 WL 879674, at *1. Likewise, the liability of the Third-Party Defendants is dependent on the outcome of the main claim. *See Joe Grasso & Son, Inc.*, 380 F.2d at 751 ("impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim."); *see also Duke*, 2014 WL 879674, No. 4:13-CV-1012-A, at *1 (same). And lastly, Hadaway is attempting to transfer to the Third-Party Defendants the liability asserted against it by United Energy. (ECF 19); *see Cambridge Strategies, LLC*, No. 3:10-CV-2167-L, 2021 WL 176587 at *6 ("The crucial characteristic of a Rule 14 claim is that [the] defendant is attempting to transfer to the third-party defendant the liability asserted against it [the original defendant] by the original plaintiff.").

Based on the foregoing, Hadaway's Motion to Join Third-Party Defendants is in line with the purpose and construction of Rule 14. Accordingly, Hadaway's Motion to Join (ECF 19) is GRANTED, and the Clerk of Court is ORDERED to file Hadaway's Third-Party Complaint (ECF 19 at 5–18) on the docket.

IT IS SO ORDERED.

ENTERED February 13, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE