IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED ENERGY DRILLING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:23-CV-119-Z-BV |
| | § | |
| HADAWAY CONSULTING & | § | |
| ENGINEERING, LLC, | § | |
| | § | |
| Defendant and Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JV MESA VISTA, LLC, et al., | § | |
| | § | |
| Third-Party Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

United States District Judge Matthew J. Kacsmaryk referred Third-Party Plaintiff

Hadaway Consulting and Engineering, LLC's (Hadaway) pending Motion for Default

Judgment to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) for the

purpose of holding an evidentiary hearing to establish damages. Dkt. No. 64. Judge

Kacsmaryk directed the undersigned to submit Findings, Conclusions, and

Recommendation (FCR) "on whether to grant default judgment and if so, the proper

amount of damages to be awarded in default judgment as determined by the evidence

presented with the Motion and at the hearing." *Id.* The Court held an evidentiary hearing

on March 6, 2025. Dkt. No. 69. Based on the evidence presented, the undersigned

magistrate judge determines that Hadaway has failed to show that it is entitled to recover damages from Sassoon.

## 1.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure authorizes the court, upon motion of the plaintiff, to enter default judgment against a defendant who has failed to plead or otherwise defend the case. Fed. R. Civ. P. 55(a)–(b).  A plaintiff can obtain default judgment when: "(1) defendant has been served with the summons and complaint and default was entered for its failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if defendant has appeared in the action, that defendant was provided with notice of the application for default judgment at least three days prior to the hearing." *Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12–cv–2092–M, 2013 WL 145502, at \*2 (N.D. Tex. Jan. 14, 2013) (internal footnote omitted) (citing 50 U.S.C. § 3931; Fed. R. Civ. P. 55).

However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted). Thus, just because "the defendant is technically in default" does not mean the plaintiff is "entitled to a default judgment as a matter of right." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345

2

(5th Cir. 1977)). In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g.*, *id.*

First, the court must determine whether default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). This inquiry involves the court evaluating whether: (1) "material issues of fact are at issue"; (2) "there has been substantial prejudice"; (3) "the grounds for default are clearly established"; (4) "the default was caused by a good faith mistake or excusable neglect"; (5) default judgment would be overly harsh; and (6) "the court would think itself obliged to set aside the default on the defendant's motion." *Id.*

If default judgment is procedurally justified, the court then assesses the substantive merits of the plaintiff's claims. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* Due to its failure to answer, a defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* But a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.* Stated differently, the court may accept as true plaintiff's allegations if they satisfy Rule 8's standard. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Finally, the court determines what form of relief, if any, the plaintiff should receive. *See, e.g.*, *1998 Freightliner*, 548 F. Supp. 2d at 384. In general, the court may not award damages without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, a hearing is not necessary if the amount of damages can be

determined with mathematical calculation by reference to the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

In addition, "when entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (alteration and citation omitted).

## 2.    Background

This dispute surrounds an oil exploration deal that went bust. JV Mesa Vista LLC, a company "engaged in oil and gas exploration and production," entered into a Service Agreement with Hadaway, which "provide[s] services related to the drilling, completing or operating of oil and gas wells." Dkt. No. 63 at 14[1] (the Agreement, also introduced at the evidentiary hearing as Exhibit 1);[2] Dkt. No. 23 at 5. The Agreement provided that Hadaway would act as an agent of JV Mesa to engage vendors in the drilling of oil and gas wells. Dkt. No. 23 at 3; *see also* Dkt. No. 63 at 14.

The parties anticipated the completion of a well in Roberts County, Texas—the Hannah 207H well. Dkt. No. 23 at 5. Hadaway was to submit vendor invoices to JV Mesa for review, approval, and payment. *Id.* at 5–6; Dkt. No. 63 at 18–19. "If approved, those invoices were to be paid from the escrow account." Dkt. Nos. 23 at 6; 70 at 22–23.

---

[1] Page citations to Hadaway's motion and supporting exhibits refer to the electronic page number assigned by the Court's electronic filing system.

[2] The Service Agreement refers to JV Mesa Vista LLC as "Alpha Seven." Dkt. No. 63 at 14. Hadaway's Third-Party Complaint lists Alpha Seven as a subsidiary of Seven Energy Investments, LLC. Dkt. No. 23 at 1 ("Seven Energy Investments, L.L.C. dba Alpha Seven Energy"). The undersigned refers to "JV Mesa/Alpha Seven" in Hadaway's Complaint and "Alpha Seven" in the Agreement simply as JV Mesa.

4

The Agreement mentions the escrow account once, stating that it was to cover the "cost of . . . bonds, surety, credit and security requirements, [and] replenishment of same." Dkt. No. 63 at 19. The Agreement also provided that "[i]n no event" was Hadaway to incur "any individual liability for payment of any costs or expenses, including drilling, completing, equipping and operating any well." *Id.* (emphasis omitted). The Agreement required JV Mesa to "indemnify [Hadaway] against any claims, demands, damages or causes of action incurred by or asserted against [Hadaway] for payment or nonpayment of such costs and expenses." *Id.* (emphasis omitted). The Agreement was signed by Peter Fagan, Manager of JV Mesa,[3] and Darrell Narron, Manager of Hadaway. *Id.* at 27.

The complaint alleges that, as required by the Agreement, "[a]n escrow account was created into which the funds for drilling and completing the well were to be deposited." Dkt. No. 23 at 6. Peter Fagan, who was Senior Partner and CFO of Alpha Seven Energy and JV Mesa, was signatory on the escrow account, as was Corey Daniel, the CEO of Joseph Sassoon Group LLC (Sassoon). *Id.* at 5, 6.[4] Fagan was Hadaway's primary contact with JV Mesa and directed many of the actions under the Agreement. *Id.* Sassoon was "essentially a hedge fund entity" that was to "provide[] funding into the escrow account from which vendors' invoices were to be paid under the Agreement." *Id.* at 6; Dkt. No. 70 at 5. According to testimony adduced at the hearing, the Sassoon Group

---

[3] Hadaway claims that Peter Fagan is also the senior partner and CFO of JV Mesa. Dkt. No. 23 at 5.

[4] The facts are recited as alleged in the complaint. *See* Dkt. No. 23 at 6. But documents submitted during the evidentiary hearing show that the CEO's name is Daniel Corey. *See* Exh. 6, 11. This report will track the facts as alleged in the complaint.

5

was supposed to provide up to $27 million in funding overall and $7 million to fund the drilling of this particular well. Dkt. No. 70 at 13. Such representations were made to Hadaway prior to and contemporaneously with entering the Agreement. *Id.* at 19–20. But neither Sassoon nor its majority owner, Joseph Sassoon, was a party to the Agreement. *See* Dkt. No. 63 at 14; Dkt No. 70 at 7, 13 (the Court asking whether Sassoon's responsibility to fund the projects appeared in the Service Agreement, with counsel's response that such documentation would be provided). And the promissory note between Sassoon Group that Hadaway purportedly relied on when entering the Agreement is dated two months *after* Hadaway signed the Agreement. *Compare* Ex. 1 at 14, *with* Ex. 8 at 1; *see also* Ex. 9.

According to Hadaway, "[a]s the drilling project progressed, Peter Fagan . . . and [David] Sassoon, Chairman of the Board of Defendant Sassoon, made intentional, false and misleading misrepresentations to Hadaway about funding that was allegedly forthcoming from which payment was to be made to . . . vendors performing services on the well." Dkt. No. 23 at 7. Although Hadaway had entered into the Agreement, it had not yet retained third-party vendors because it wanted to be sure there was money in the escrow account. Dkt. No. 70 at 25. Hadaway communicated with Daniel, Sassoon's CEO, who indicated he had "a wire queued up" but was "waiting on funds to settle." *Id.* at 25–26; *see also* Ex. 10. Despite not having proof of funding, Hadaway began engaging third-party vendors because Hadaway understood that "if you don't start drilling" by the Continuous Drilling Obligation date—here, January 24, 2023—"you lose

the lease." Dkt. No. 70 at 27. Thus, Hadaway felt that "[t]he money was coming" and since the lease expiration was imminent, Sassoon "had to spud." *Id.* at 28.

Eventually, "when Hadaway asked for additional funds to pay outstanding invoices for vendors who had provided services, . . . it was told there were no more funds available[.]" *Id.* at 7–8. By June 2023, Sassoon told Hadaway that it had "finalized all the required documents for the release of funds," and was expecting to wire funds in four tranches. Ex. No. 12. Sassoon said it had "not stopped trying to raise the money for this project" although it had "surrendered [its] rights." *Id.*

United Energy Drilling, Inc. (United Energy) was one of the vendors whose invoice went unpaid. *Id.* United Energy sued Hadaway in this action. *See* Dkt. No. 1. As a result, Hadaway filed a third-party complaint against JV Mesa, Seven Energy Investment, LLC, and Sassoon (collectively the Third-Party Defendants). Dkt. No. 23. Hadaway served the Third-Party Defendants with summons. Dkt. Nos. 24–27, 35, 36, 41. JV Mesa and Seven Energy answered. Dkt. Nos. 38, 44. Hadaway settled its claims with United Energy, JV Mesa, and Seven Energy. Exs. 2, 5; Dkt. Nos. 61, 62, 68.

Third-Party Defendant Sassoon never answered or otherwise appeared in this case. Dkt. No. 63 at 2. At Hadaway's request, the Clerk entered default against Sassoon. Dkt. Nos. 51, 54. Hadaway now moves for default judgment for breach of contract, breach of principal-agency relationship, fraud, and declaratory relief. Dkt. No. 63.

7

3.    **Analysis**

### A. The Court has jurisdiction.

This case arose in diversity. *See* 28 U.S.C. § 1332. "United Energy, an Oklahoma corporation with its principal place of business in Norman, Oklahoma," sued "Hadaway, a Texas limited liability company" (LLC) with its members being Texas citizens. Dkt. No. 8 at 1–2. The amount in controversy exceeded $75,000. *Id.* at 1.

Hadaway in turn filed a Third-Party Complaint against JV Mesa, Seven Energy, and Sassoon. Dkt. No. 23 at 3. JV Mesa and Seven Energy are LLCs whose members are Texas citizens. Dkt. No. 23 at 2–3. Sassoon is a foreign LLC incorporated in Delaware. *Id.* at 3. Joseph Sassoon, a resident of New York and Greece, is "probably the majority owner" of Sassoon. Dkt. No. 70 at 7. Corey Daniel, another member, is a resident of New York. *Id.*

"Federal courts have supplemental jurisdiction under 28 U.S.C. § 1367." *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004). That statute "grants supplemental jurisdiction over other claims that do not independently come within the jurisdiction of the district court but form part of the same Article III 'case or controversy.'" *Id.* "Under § 1367(a), the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" and "claims that involve the joinder of additional parties." *Id.* (internal quotation marks, alterations, and citation omitted).

8

"Section 1367(b), however, withdraws some of the jurisdiction that § 1367(a) would otherwise allow." *Id.* "Where . . . the district court's original jurisdiction is based solely on diversity, the district court does *not* have supplemental jurisdiction over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of 28 U.S.C. § 1332, the statutory grant of diversity jurisdiction." *Id.* (internal quotation marks, brackets, and citation omitted). The Court can, however, exercise supplemental jurisdiction over claims made by non-plaintiffs, which includes defendants who also happen to be third-party plaintiffs. *Id.* at 80–81 (explaining that a court has supplemental jurisdiction over a defendant's claim even if it would otherwise run afoul of diversity rules because "defendants are involuntarily brought into court," and their joinders and impleaders are less suspect). Thus, the Court has supplemental jurisdiction over Hadaway's claims against Sassoon.

Alternatively, in its current posture, the only remaining parties in this dispute are Hadaway, a Texas resident, and Sassoon, a non-Texas resident, and the amount in controversy exceeds \$75,000. So, if the case were refiled and the parties reorganized, the Court would have original diversity jurisdiction as well. 28 U.S.C. § 1332.

### B. Default judgment is available.

Hadaway has satisfied the prerequisites for a default judgment in its favor on its third-party claims against Sassoon. *See* Fed. R. Civ. P. 55(b)(2). It served its complaint on Sassoon, and Sassoon failed to respond or appear. *See* Dkt. Nos. 24, 27, 41. Sassoon is not a minor, incompetent person, or member of the military. *See* Dkt. No. 63 at 3. The

9

Clerk of Court has entered default against Sassoon. *See* Dkt. No. 54. Thus, the Court

turns to its evaluation of whether default judgment is procedurally and substantively

warranted.

### C. Default judgment is procedurally warranted.

Default judgment is procedurally warranted because Hadaway's claims satisfy the

*Lindsey* factors. *See* 161 F.3d at 893. First, the Court accepts all Hadaway's well-

pleaded allegations as true. *See Wooten*, 788 F.3d at 496. Given Sassoon's failure to

answer Hadaway's allegations, there are no material facts in dispute. *See J & J Sports*

*Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015); *see*

*also Lindsey*, 161 F.3d at 893. Thus, the Court may take as true Hadaway's pleadings

demonstrating all material facts underlying its claims. *See* Dkt. No. 23. *Lindsey*'s first

prong thus favors default judgment.

Similarly, nothing here shows the second factor's "substantial prejudice"

requirement undermines Hadaway's entitlement to default judgment. *See Lindsey*, 161

F.3d at 893. Sassoon's failure to answer the Complaint or otherwise appear unjustifiably

hinders the progress of litigation, which substantially prejudices Hadaway's interests.

*Gandy v. Lynx Credit*, No. 3:14-cv-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. Dec. 3,

2014) (citing *Lindsey*, 161 F.3d at 893). *Lindsey*'s second prong thus favors default

judgment.

The third, fourth, and fifth elements also support default judgment because the

grounds of Sassoon's default are clearly established, *see* Dkt. No. 54, and nothing

indicates this default is due to "a good faith mistake or excusable neglect." *See Lindsey*,

161 F.3d at 893. And despite being afforded multiple opportunities to do so, Sassoon has failed to respond to Hadaway's Complaint or file any other documents explaining its unresponsiveness. Sassoon has had more than one year to answer the Complaint and over five months to respond to the motion for default. Accordingly, these factors also support default judgment. *See Lindsey* 161 F.3d at 893; *see also Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-cv-01889-M, 2017 WL 373478, at *2 (N.D. Tex. Jan. 26, 2017) ("Entering default judgment against [Defendants], who have taken no action to respond to this action, is not 'harsh.'" (quoting *Lindsey*, 161 F.3d at 893)); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) ("[Defendant] has had over five months to answer or otherwise respond to [p]laintiff's [c]omplaint, mitigating the harshness of a default judgment.").

Finally, given the clear satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893; *see also Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"). Accordingly, the *Lindsey* analysis reflects that default judgment is proper here.

11

### D. Hadaway pleads insufficient facts to warrant default judgment against Sassoon.

#### i.    Breach of Contract

Hadaway asserts a claim against Sassoon for breach of the Agreement. Dkt. No. 23 at 8. Hadaway does not dispute that the Agreement was between Hadaway and JV Mesa; Sassoon was not a party. Dkt. No. 70 at 8; Dkt. No. 23 at 5. Hadaway nonetheless advocates that "[t]he corporate fiction of *Mesa Vista/Alpha Seven* should be disregarded and Defendants Seven Energy and Sassoon Group" should be held liable. Dkt. No. 23 at 9–12 (emphasis added). Hadaway confirmed at the evidentiary hearing that it was seeking to hold Sassoon liable for breach of contract by disregarding the corporate entity of JV Mesa—that is, piercing the corporate veil—under two theories: (1) alter ego, and (2) joint venture. Dkt. No. 70 at 37–38.

"Due to the limited liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'" *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013). "Under Texas law, an assertion of veil piercing or corporate disregard does not create a substantive cause of action; such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *Id.* (internal quotation marks, alterations, and citation omitted)

One basis for disregarding the corporate structure and piercing the corporate veil is the "alter ego doctrine." *Norfolk S. Ry. Co. v. Trinity Indus., Inc.*, No. 3:07-CV-1905,

12

2009 WL 362437, at *5 (N.D. Tex. Feb. 13, 2009). A "corporate veil may be pierced to

hold an alter ego liable for the commitments of its instrumentality only if (1) the owner

exercised complete control over the corporation with respect to the transaction at issue

and (2) such control was used to commit a fraud or wrong that injured the party seeking

to pierce the corporate veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347,

359 (5th Cir. 2003). "Alter ego determinations are highly fact-based," requiring courts to

"consider[] the totality of the circumstances in which the instrumentality functions." *Id.*

To determine if an alter ego relationship is established, the court must consider whether:

> (1) distinct and adequately capitalized financial units are incorporated
> and maintained; (2) daily operations of the two corporations are separate;
> (3) formal barriers between management of the two entities are erected,
> with each functioning in its own best interests; and (4) those with whom
> the corporations come in contact are apprised of their separate identity.
> Other factors deemed important by the commentators and Texas courts
> are: (1) common stock ownership; (2) the method and degree of
> financing of the subsidiary by the parent; (3) common directors or
> officers; (4) separate books and accounts; (5) common business
> departments; (6) extent to which contracts between parent and subsidiary
> favor one over the other; and (7) connection of parent's employee,
> officer or director to subsidiary's tort or contract giving rise to suit.

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1162–63 (5th Cir. 1983). "No single

factor is determinative," as "should be apparent from the extensive list of circumstances

that courts have developed to guide alter ego determinations." *Bridas S.A.P.I.C.*, 345

F.3d at 359. Where the businesses "themselves disregard the separation of the" business

entities, then the alter ego rationale is that "the law will also disregard" such. *See*

*Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1288 (5th Cir. 1988) (per curiam).

13

Hadaway presented evidence showing that Sassoon, although not a signatory to the Agreement, played a role in its fulfillment. Hadaway provided an affidavit and testimony from its managing member Jonathan Frederick. Dkt. No. 63 at 7–11. Frederick said that Sassoon held itself out as the funding entity for the Hannah 207H well. *Id.* at 8. "Sassoon agreed to deposit enough funds to pay for the costs and expenses incurred to complete the Project into the escrow account." *Id.* Hadaway presented emails in which representatives of Sassoon discussed financing issues with employees of Hadaway and Alpha Seven. *See* Exs. 10–12. Hadaway also provided news articles about Sassoon and its intentions to invest in West Texas oil projects, which the undersigned does not find to be of evidentiary value. Ex. 6. As pled and presented, the facts support a finding that Sassoon was related to or engaged with JV Mesa to the extent that Sassoon was to provide financing for the Hannah 207H well project. *See, e.g.*, Dkt. No. 70 at 5 (Sassoon is "essentially a hedge fund entity."); Dkt. No. 23 at 6 ("The responsibility to pay such invoices . . . was solely that of Mesa Vista[] with funding provided by Defendant Sassoon.").

However, there are no facts or evidence demonstrating that Sassoon had control, much less complete control, of JV Mesa. Instead, the record supports the conclusion that Sassoon and JV Mesa are separate entities. They are citizens of different states. *See* Dkt. 23 at 2–3 (Sassoon's "home office address [is] 48 Wall Street, Eleventh Floor, New York, New York 10005," and JV Mesa's principal place of business is at 3811 Turtle Creek Boulevard, Suite 1850, Dallas, Texas 75219.); *see also* Dkt. Nos. 24–17, 35, 36, 41. The corporate representatives are different. Peter Fagan is the manager, CFO, and

Senior Partner of JV Mesa, while David Sassoon, Sassoon's chairman, and Corey Daniel, CEO, represent Sassoon. Dkt. No. 23 at 6–7. The representatives for each entity have different email domains—@josephsassoongr.com and @alphasevenenergy.com. *See* Exs. 10–12. And there is no allegation of overlapping membership in the LLCs.

Moreover, Hadaway provides only conclusory assertions that Sassoon used JV Mesa as an alter ego. *See* Dkt. No. 63 at 8–9 ("Sassoon used the corporate existence of JV Mesa[] to shield itself from potential liability. . . . JV Mesa[] was organized and operated as a mere tool or business conduit of Sassoon. JV Mesa[] was used as a means for Sassoon to evade an existing legal obligation to Hadaway and to the Third Party Vendors who worked on the Project."). Hadaway offers no facts to support these assertions. How does Hadaway *know* Sassoon used JV Mesa to shield itself from liability? What facts *show* that JV Mesa was organized to serve as a mere tool or business conduit for Sassoon? Hadaway alleges that JV Mesa was undercapitalized, but the Fifth Circuit has held that undercapitalization alone does not justify piercing the corporate veil. *Ledford v. Keen*, 9 F.4th 335, 340 (5th Cir. 2021). Without adequate factual allegations, such conclusory statements are insufficient to establish Hadaway's claim. *See Med. Supply Chain, Inc. v. Gen. Elec. Co.*, 144 F. App'x 708, 713 (10th Cir. 2005) (affirming ruling that complaint failed to adequately plead alter ego claim because it lacked any "factual allegations to support the[] conclusory statements"); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (affirming dismissal of alter ego claim because the pleadings were "devoid of *any* specific facts or circumstances supporting this assertion").

15

The undersigned recommends that the district judge conclude that Hadaway has not shown that "there is such unity between [Sassoon and JV Mesa]" that the corporate identity of JV Mesa should be disregarded, thereby dooming Hadaway's default claim against Sassoon for breach of contract. *See, e.g.*, *Galvan v. Caviness Packing Co.*, 546 F. Supp. 2d 371, 379 (N.D. Tex. 2008) (holding that because there was no evidence of the level of entanglement between the individuals and the corporation, no evidence of financial information, and no evidence that individuals used the corporation for personal purposes, the alter ego doctrine did not apply).

Hadaway also proposes that Sassoon be held responsible under an alternative theory that Sassoon and JV Mesa were engaged in a joint venture. Dkt. No. 70 at 8, 10, 19, 37–38. But this approach has problems as well. First, that Hadaway understood JV Mesa and Sassoon to be part of a "joint venture" does not appear to be a theory under which Texas courts pierce the corporate veil. *See W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994) (stating "three broad categories in which a court may pierce a corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud"). Second, Hadaway has not adequately alleged the elements of a joint venture.

The essential elements of a joint venture "are an agreement, a common purpose, a community of pecuniary interest, and an equal right of control." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008). But Hadaway has not alleged facts showing that Sassoon and JV Mesa exerted "an equal right of control" in the

purported joint venture, and Texas has "never approved of imposing joint liability on separate entities merely because they were part of a single business enterprise." *Id.*; *see also Norfolk S. Ry. Co.*, 2009 WL 362437, at *5 (stating that the doctrine of piercing the corporate veil only applies if the owner exercised complete control over the corporation with respect to the transaction at issue).

In sum, even taking the facts pled in the complaint to be admitted by Sassoon, Hadaway has not established a unity between Sassoon and JV Mesa such that the Court can disregard the corporate entity of JV Mesa and hold Sassoon responsible for JV Mesa's breach of the Agreement, either in terms of awarding damages or requiring specific performance. For similar reasons, the district judge should decline Hadaway's request to disregard the corporate fiction of JV Mesa to hold Sassoon liable for breach of the principal-agency relationship, fraud, and declaratory relief because, in each instance, those claims rely on piercing the corporate veil to hold Sassoon responsible for JV Mesa's obligations.

### ii. Fraud

Hadaway asserts a fraud claim against Sassoon for allegedly misrepresenting the availability of funds to pay vendors to complete the drilling under the Agreement. Dkt. No. 23 at 10. The undersigned evaluates this claim as a common law claim of fraud as opposed to fraudulent inducement because "[f]raudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001). Because Hadaway has not established the existence of a contract with Sassoon, Hadaway cannot

17

assert a fraudulent inducement claim. Any attempt to predicate a fraudulent inducement

claim on Hadaway's contracts with vendors also fails because the defendant must be a

party to the contract. *Total Rx Care, LLC v. Great N. Ins. Co.*, No. 3:16-CV-2965-B,

2017 WL 3034083, at \*7 (N.D. Tex. July 17, 2017); *see* Dkt. No. 23 at 10 (Hadaway

asserting that Sassoon "induc[ed] Hadaway to enter into contracts with vendors . . . .").

To succeed on a common law fraud claim, Hadaway must demonstrate the

following:

> (1) a material misrepresentation was made; (2) it was false when made;
> (3) the speaker either knew it was false, or made it without knowledge
> of its truth; (4) the speaker made it with the intent that it should be acted
> upon; (5) the party acted in reliance; and (6) the party was injured as a
> result.

*Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002) (citing *Formosa Plastics Corp.*

*USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998)). Hadaway

is required to plead its claim with particularity. Fed. R. Civ. P. 9(b); *see Williams v.*

*WMX Techs., Inc.,* 112 F.3d 175, 177–78 (5th Cir. 1997) (explaining that "[p]leading

fraud with particularity in this circuit requires "time, place and contents of the false

representations, as well as the identity of the person making the misrepresentation and

what [that person] obtained thereby").

Hadaway avers that Sassoon made a material misrepresentation by "represent[ing]

that there would be sufficient funding to be able to pay all costs and expenses necessary

to complete the project . . . in a timely manner." Dkt. No. 23 at 10; *see also* Dkt. No. 63

at 9 ("Both before and during the course of the Project, representatives of Sassoon made

representations that funding for the Project would be immediately forthcoming.").

Hadaway maintains that Sasson made such representation with the intent to induce Hadaway to engage vendors to complete the project. *See* Dkt. No. 23 at 10. According to Hadaway, Sassoon directed and insisted that Hadaway retain vendors to perform services and provide materials for the project with promises that it would pay the cost. Dkt. No. 63 at 9. Sassoon also "told Hadaway that time was of the essence because the lease agreement [requiring drilling] was set to expire unless drilling commenced within a specific time frame." *Id.*; Ex. 11. Hadaway relied on Sassoon's statements and engaged vendors. But Sassoon later indicated there was not enough money to fund the project. Dkt. No. 23 at 7–8. Due to the lack of funding, Hadaway was unable to pay vendors and incurred financial loss—unpaid services, outstanding invoices from vendors, and legal liability. *See* Dkt. No. 63 at 29–30; Ex. 2, 3.

"Based upon the documents," Hadaway believes that Sasson's representations were false and that "Sasson's representatives knew or should have known such representations were false . . . ." Dkt. No. 63 at 9. But while Hadaway's complaint alleges that either Daniel Sassoon or David Sassoon made false representations, the complaint alleges no underlying facts showing what Sasson's representatives knew or should have known at the time the representations were made. "A statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of the truth." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex. 1998) (citing *Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d 156, 163 (Tex. 1995)); *see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[P]laintiffs must set forth *specific facts* supporting an

inference of fraud[,] . . . such as identify[ing] circumstances that indicate conscious

behavior on the part of the defendant.") (citations omitted)); *see, e.g., Thomas v.*

*Cadwalander*, No. 3:20-CV-3437-L-BH, 2022 WL 1158261, at \*4 (N.D. Tex. Mar. 17,

2022) (explaining that to be granted default judgment on a fraud claim, plaintiff needs to

plead facts on each element with specificity), *R. & R. adopted sub nom. Thomas v. Terry*,

No. 3:20-CV-3437-L-BH, 2022 WL 1158011 (N.D. Tex. Apr. 19, 2022).

The facts alleged in the complaint do not establish that Sassoon knew there was

insufficient funding at the time it made its statement, thereby failing to establish that the

statement was a misrepresentation. Moreover, the documents presented at the evidentiary

hearing do nothing to help Sassoon. The emails Hadaway wants the Court to consider

show that Sassoon told Hadaway that funding was forthcoming and provided a

breakdown of a payment schedule. Ex. 10; Ex. 12 at 2. Sassoon also made a partial

payment. Dkt. No. 23 at 7 ("The sum total of the funding that was actually provided was

$380,000.00."). Aside from not being adequately alleged in the complaint, if Sassoon

reasonably believed that the funds would be forthcoming or otherwise available, then

Sassoon's statements were not knowingly false, and Sassoon cannot be held responsible

for fraud. *See* Ex. 12 at 2 (Sassoon stated, "We are expecting the money to arrive in our

account by the end of the week, Monday the latest. We are expecting four tranches of

wire, but not all at the same time."). Hadaway has only shown that Sassoon said it would

fund the project and expected the funding to arrive, but then did not fund the project.

Hadaway's factual allegations thus fall short of showing that Sassoon knew the funding

would not be available at the time it made the purported misrepresentations. Thus, the

undersigned recommends that the district judge deny the request for default judgment against Sassoon based on common law fraud.

### E. If the district judge awards default, Hadaway would be entitled to damages.

If the district judge disagrees with the recommendation of the undersigned and determines that Hadaway is entitled to default judgment, it should be awarded $1,580,515.24, which is the undersigned's best calculation of Hadaway's unrecovered losses, not including attorneys' fees.

Under Texas law, direct—i.e., benefit-of-the-bargain— damages and consequential damages may be recovered for breach of contract and fraud claims. *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 275 (5th Cir. 2012) (citing *Formosa Plastics*, 960 S.W.2d at 49); *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 184, 194 (Tex. 2022). "Benefit-of-the-bargain damages derive from an expectancy theory and evaluate the difference between the value that was represented and the value actually received." *Bohnsack*, 668 F.3d at 275 (internal quotation marks omitted) (quoting *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007)). Benefit-of-the-bargain damages are only available "for injuries that arise out of an enforceable contract." *Id.* at 276.

"Consequential damages permit plaintiffs to recover damages that are foreseeable and directly traceable to the fraud and result from it and must be properly pleaded and proved." *Id.* at 275 (internal quotation marks omitted) (quoting *Formosa Plastics*, 960 S.W.2d at 49 n.1). "Consequential damages are damages that result naturally but not necessarily from the wrongful act." *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d

21

1, 19 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). "Consequential damages are recoverable only if the misrepresentation is a producing cause of the loss, i.e. if the losses are foreseeable and directly traceable to and result from the misconduct." *Id.*

At the evidentiary hearing, Hadaway submitted evidence of outstanding vendor invoices that total $1,688,433.17.[5]  Ex. 4.  Consequently, should the district judge determine that Hadaway is entitled to recover the amount it incurred in contracting with vendors, it would be entitled to $1,688.433.17. *See* Ex. 4.  Hadaway also provided evidence of losses for unpaid services in the amount of $87,987.57, *see* Ex. 3, and $300,000 to settle with United Energy in the instant case, *see* Ex. 2.  Hadaway settled with other third-party defendants for $495,905.50. *See* Ex. 4.  That leaves Hadaway with $1,580,515.24 in unrecovered losses.

Should the district judge determine that Hadaway may prevail on its breach of contract claim or its fraud claim or both, the Court should award $1,580,515.24 based on Texas's one-satisfaction rule. *See Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016) (discussing that the Texas one-satisfaction rule operates to prevent double recovery for a single wrong); *see also Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 (Tex. 2018) ("There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." (citation omitted)).  Accordingly, Hadaway may

---

[5] Hadaway's third-party complaint requests $2,091,118.37 for outstanding invoices from vendors. Dkt. No. 23 at 13.  In its motion for default judgment, it indicates a balance of $1,752,211.66. *See* Dkt. Nos. 63 at 30; 63-1 at 21.  The evidence it submitted at the evidentiary hearing accounts for $1,688,433.17. *See* Ex. 4.

recover $1,580,515.24 for either claim, but not both. *Liquid Cap. of Am. Corp. v. Effective Bus. Sols. Inc.*, No. 3:18-CV-3102-S-BH, 2020 WL 2950412, at *8 (N.D. Tex. Mar. 30, 2020) ("When a party prevails on multiple causes of action for the same injury, 'federal courts apply Texas's one satisfaction rule, which requires the prevailing party to elect between the alternative claims for purposes of recovery.'" (citing *Malvino*, 840 F.3d at 233)), *R. & R. adopted by* 2020 WL 2926471 (N.D. Tex. June 2, 2020).

### Attorneys' fees

In its complaint, Hadaway also requests reasonable attorneys' fees on the breach of contract and declaratory relief claims. Dkt. No. 23 at 13. In its motion for default judgment, it seeks fees incurred in "defense of third party vendors' claims and in prosecuting Hadaway's claims against the Third Party Defendants, in the amount of $63,553,25. Dkt. No. 63 at 3. Hadaway does not brief the legal basis for each portion of the attorneys' fees it seeks to recover. Based on the recommendation against default, the undersigned magistrate judge recommends that no attorneys' fees be awarded.

However, to the extent the district judge disagrees, the undersigned provides the following information regarding attorneys' fees. If the district judge pierces the corporate veil and holds Sassoon liable for damages on the contractual claims, Hadaway would be entitled to the attorneys' fees on the breach of contract and request for fees raised in its complaint. *Hong v. Havey*, 551 S.W.3d 875, 891 (Tex. App.—Houston [14th Dist.] 2018) ("A party prevailing on a breach of contract claim is entitled to recover reasonable attorney's fees." (citing Tex. Civ. Prac. & Rem. Code § 38.001(8))). But Hadaway can only recover the amounts requested in its complaint. *See Heritage*

23

*Auctions, Inc. v. Hopp*, No. 3:10-CV-482-O, 2011 WL 13290743, at \*4 (N.D. Tex. Sept. 26, 2011) ("[T]he relief prayed for in the complaint limits the relief available on default judgment." (citation omitted)). Should the district judge decline to pierce the corporate veil of JV Mesa but still conclude that Sassoon is liable for common law fraud, Hadaway would not be entitled to recover attorneys' fees based both on the cause of action and because this relief was not sought in the original complaint. *Id.*; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (stating that attorneys' fees are generally not recoverable for common law fraud).

Hadaway presented legal bills for review. Ex. 14. Those bills included $88,858.25 in attorney and other legal professionals' time plus additional expenses of $2,768.58. *See id.* The undersigned has carefully reviewed each entry in the billing records. *See* Ex. 14. If the district judge determines that Sassoon is liable for breach of the Service Agreement with Hadaway as it relates to the original plaintiff—United Energy—the district judge should award $28,620 in attorney time and $425.72, as this amount reasonably represents the entries that clearly relate to Hadaway's defense to the suit filed by United Energy. This amount does not reflect any amounts or entries by the Lovell firm, as those entries are not sufficiently detailed to determine which entries relate to which portion of the representation. To the extent that the district judge determines that Hadaway may recover breach of contract/indemnity damages in the entirety of its legal fees spent on this case, including in its defense against other vendors, pursuing and settling with other third-party defendants, and pursing claims and default against

24

Sassoon, then the district judge could award up to the full amount of attorneys' fees
sought—$91,626.83.

## 4.    Recommendation

The undersigned magistrate judge does not miss the fact that this West Texas
contractor was left holding the proverbial bag due to the nonpayment of monies
"promised" by a New York hedge fund. But Hadaway did not contract with Sassoon to
ensure payment, and it did not ensure that JV Mesa was adequately funded prior to
incurring costs. Moreover, Hadaway alleges insufficient facts for the undersigned
magistrate judge to discern what Sassoon knew or should have known about its own
financial status or the alleged intentional underfunding of JV Mesa. Thus, the
undersigned recommends that the district judge **DENY** Hadaway's request for default
judgment against Sassoon.

## 5.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all
parties in the manner provided by law. Any party who objects to any part of these
findings, conclusions, and recommendation must file specific written objections within
fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R.
Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion,
or recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's Findings, Conclusions, and Recommendation
where the disputed determination is found. An objection that merely incorporates by
reference or refers to the briefing before the magistrate judge is not specific. Failure to

25

file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 22, 2025.

**AMANDA 'AMY' R. BURCH**
**UNITED STATES MAGISTRATE JUDGE**

26